*FILED*

*2026 JUN 29  AM 10: 08*

*CLERK U.S. DISTRICT COURT*
*CENTRAL DIST. OF CALIF.*
*LOS ANGELES*

*BY:* _____

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

**JOZSEF CSIZMADIA,**

Plaintiff,

v.

**UNIVERSITY OF SOUTHERN CALIFORNIA;**
**DOES 1–50, inclusive,**

Defendants.

*2:26-cv-07050-MWC-PD*

*Fee Due*

**COMPLAINT FOR DAMAGES,**

DECLARATORY RELIEF,
AND INJUNCTIVE RELIEF

(42 U.S.C. §1983;
Fourth Amendment;
California Law)

DEMAND FOR JURY TRIAL

## I. INTRODUCTION

1. This civil-rights action arises from Defendants' warrantless entry into Plaintiff's private residence, unlawful detention, unlawful arrest, unreasonable seizure, and imprisonment on July 7, 2025.

2. Plaintiff seeks redress under 42 U.S.C. §1983 and California law for violations of rights guaranteed by the Fourth Amendment to the United States Constitution and related California law.

3. Defendants entered Plaintiff's rented bedroom without a judicial warrant, without Plaintiff's consent, without exigent circumstances, and without probable cause.

4. Defendants thereafter handcuffed Plaintiff, detained him, transported him from his residence, caused him to be booked into the Los Angeles County jail system, and deprived him of his liberty for approximately nineteen hours.

5. Plaintiff was never formally charged with any criminal offense.

6. The Los Angeles City Attorney ultimately declined to file criminal charges after reviewing the matter because the evidence was insufficient to support prosecution.

7. The arrest was based solely upon an uncorroborated accusation made by Plaintiff's roommate.

8. Before arresting Plaintiff, Defendants failed to conduct a reasonable investigation. Defendants did not meaningfully interview Plaintiff concerning the allegations, did not request a written statement, did not interview neutral witnesses before the arrest, did not seek corroborating evidence, and did not evaluate whether the reporting witness's allegations were objectively reliable before depriving Plaintiff of his liberty.

9. Rather than investigating first and arresting later, Defendants arrested Plaintiff first and left meaningful investigation until afterward.

10. Plaintiff had committed no crime.

11. Plaintiff posed no immediate threat to any person.

12. Plaintiff possessed no weapon.

13. Plaintiff offered no physical resistance.

14. Plaintiff made no attempt to flee.

15. Plaintiff had never previously been arrested.

16. Plaintiff had never before been incarcerated.

17. Plaintiff had no criminal history whatsoever.

18. Despite Plaintiff's complete lack of criminal history, Defendants caused bail to be fixed at $50,000, forcing Plaintiff and persons acting on his behalf to incur thousands of dollars in non-refundable bond expenses before his release.

19. As a direct and proximate result of Defendants' conduct, Plaintiff suffered loss of liberty, invasion of the privacy and sanctity of his home, emotional distress, humiliation, physical injury, educational interruption, financial losses, housing displacement, reputational injury, delayed professional licensing, and continuing psychological harm.

20. Plaintiff further seeks declaratory and equitable relief requiring Defendants to preserve and produce evidence relating to the events giving rise to this action.

## II. JURISDICTION AND VENUE

21. This Court has original jurisdiction pursuant to 28 U.S.C. §1331 because this action arises under the Constitution and laws of the United States, including 42 U.S.C. §1983.

22. This Court has jurisdiction under 28 U.S.C. §1343(a)(3) and (4).

23. This Court has supplemental jurisdiction over Plaintiff's California-law claims pursuant to 28 U.S.C. §1367 because those claims arise from the same nucleus of operative facts.

24. Venue is proper in the Central District of California under 28 U.S.C. §1391(b) because all acts complained of occurred within Los Angeles County, California.

## III. PARTIES

25. Plaintiff JOZSEF CSIZMADIA is an individual who at all relevant times resided in Los Angeles County, California.

26. At all relevant times Plaintiff rented and occupied a private bedroom located at 1281 West 35th Street, Los Angeles, California.

27. Plaintiff was enrolled as a full-time Aviation Maintenance Technology student at West Los Angeles College.

28. Plaintiff was simultaneously pursuing flight training toward FAA pilot certification through Glendale Community College.

29. Defendant UNIVERSITY OF SOUTHERN CALIFORNIA ("USC") is a private California nonprofit educational institution maintaining its principal place of business in Los Angeles County.

30. Defendant UNIVERSITY OF SOUTHERN CALIFORNIA DEPARTMENT OF PUBLIC SAFETY ("USC DPS") is the department through which USC provides armed public safety and law-enforcement services.

31. Upon information and belief, USC DPS officers were appointed pursuant to California Penal Code §830.7 and exercised delegated governmental peace-officer authority.

34. Plaintiff is presently unaware of the identities of additional participating officers, supervisors, dispatchers, investigators, policymakers, or other responsible persons and therefore sues DOES 1 through 50.

35. Plaintiff will amend this Complaint to substitute the true names and capacities of the Doe Defendants immediately upon discovery.

36. At all relevant times each Defendant acted as the agent, employee, representative, supervisor, partner, alter ego, or joint participant of every other Defendant and acted within the course and scope of that relationship.

## IV. STATE ACTION

37. At all relevant times Defendants exercised governmental law-enforcement authority delegated by the State of California.

38. USC DPS officers exercised powers traditionally and exclusively reserved to governmental peace officers, including investigating alleged criminal conduct, detaining individuals, making warrantless arrests, handcuffing suspects, transporting arrestees, coordinating with public law-enforcement agencies, initiating criminal booking, and causing incarceration.

39. Defendants exercised or purported to exercise governmental authority rather than merely protecting private property.

40. Upon information and belief, USC DPS officers acted pursuant to California Penal Code §830.7, memoranda of understanding, mutual-aid agreements, cooperative arrangements, and ongoing law-enforcement coordination with the Los Angeles Police Department and Los Angeles County jail authorities.

41. Defendants therefore acted under color of state law within the meaning of 42 U.S.C. §1983.

42. USC is liable under §1983 to the extent Plaintiff's constitutional injuries resulted from USC's own policies, customs, practices, failures to train, failures to supervise, ratification, deliberate indifference, or other institutional conduct, and not solely because it employed the individual officers.

## V. FACTUAL ALLEGATIONS

### A. Events Before the Arrest

43. Plaintiff lawfully rented and exclusively occupied a private bedroom within the residence located at 1281 West 35th Street in Los Angeles.

44. During the early morning hours of July 7, 2025, Plaintiff was asleep inside his private bedroom.

45. At approximately 3:45 a.m., several USC DPS officers (employed by USC) repeatedly banged on Plaintiff's bedroom door, awakening him.

46. The officers identified themselves as members of the University of Southern California Department of Public Safety.

47. The officers first asked Plaintiff whether he was affiliated with USC as a student, employee, or faculty member.

48. Plaintiff truthfully answered that he was not.

49. The officers then requested Plaintiff's identification.

50. Plaintiff stepped back into his private bedroom solely for the purpose of retrieving his identification.

51. Without requesting permission and without obtaining Plaintiff's consent, one or more USC DPS officers immediately followed Plaintiff into his private bedroom.

52. Plaintiff questioned whether the officers possessed lawful authority to enter his private room without permission.

53. The officers asserted that they had such authority but provided no warrant and identified no exigent circumstance.

**B. Warrantless Entry, Unlawful Detention, and Arrest**

54. Immediately after entering Plaintiff's private bedroom without permission, Defendants confronted Plaintiff regarding allegations made by one of Plaintiff's roommates.

55. Defendants asked Plaintiff whether he had assaulted or made life-threatening threats against the reporting roommate.

56. Plaintiff unequivocally denied both allegations.

57. Defendants asked no meaningful follow-up questions.

58. Defendants made no effort to obtain Plaintiff's complete account of the events before depriving him of his liberty.

59. Defendants did not request a written statement from Plaintiff.

60. Defendants did not attempt to verify Plaintiff's explanation before restraining him.

61. Instead, Defendants treated Plaintiff's denial as evidence that he was being "uncooperative."

62. Defendants then physically restrained Plaintiff.

63. Defendants placed Plaintiff in handcuffs.

64. Plaintiff remained calm and offered no physical resistance.

65. Plaintiff did not threaten the officers.

66. Plaintiff possessed no weapon.

67. Plaintiff attempted no escape.

68. Plaintiff complied with the officers' commands.

69. No emergency existed requiring immediate custodial arrest.

70. No person was in immediate danger.

71. Defendants had ample opportunity to conduct additional investigation before depriving Plaintiff of his liberty.

72. Nevertheless, Defendants immediately decided to take Plaintiff into custody.

73. Plaintiff was informed only that he was being taken for questioning.

74. Plaintiff was never meaningfully questioned before being transported away from his residence.

74A. Although Defendants represented that Plaintiff was being transported for questioning, Defendants did not conduct any meaningful custodial interview before delivering Plaintiff to jail for booking.

75. Defendants therefore detained Plaintiff before conducting a reasonable investigation into the allegations.


**C. Transportation and Booking**

76. Before transporting Plaintiff, Defendants refused Plaintiff's request for drinking water.

77. Defendants refused Plaintiff's request to use the restroom.

78. Defendants refused Plaintiff's request to retrieve his eyeglasses.

79. Plaintiff informed Defendants that he could not properly read without his glasses.

80. Defendants nevertheless transported Plaintiff without allowing him to retrieve them.

81. Plaintiff also advised Defendants that he had a scheduled examination later that morning as part of his aviation studies.

82. Defendants acknowledged Plaintiff's statement but nevertheless removed him from his residence.

83. Defendants confiscated Plaintiff's cellular telephone.

84. Plaintiff was transported while handcuffed.

85. Defendants first transported Plaintiff to USC property.

86. Plaintiff was not questioned there.

87. Plaintiff was not interviewed there.

88. Plaintiff was not permitted to explain the allegations there.

89. Instead, Defendants transported Plaintiff to a police facility.

90. Plaintiff remained confined there for approximately thirty minutes.

91. Again, Plaintiff was not meaningfully questioned.

92. Plaintiff was then transported to the Los Angeles County jail system.

93. Plaintiff remained handcuffed during these transports.

94. Plaintiff was deprived of his liberty continuously from the time he was removed from his residence.

95. Plaintiff did not learn the identity of the jail until after his release.

96. Upon arrival at the jail, booking could not immediately proceed.

97. Jail personnel advised that documentation necessary for booking had not yet been completed or delivered.

98. Plaintiff remained in custody while USC DPS officers obtained or completed additional documentation.

99. Plaintiff is informed and believes that discovery will establish the nature, timing, preparation, transmission, and legal sufficiency of those booking documents.

100. Plaintiff presently makes no allegation regarding the ultimate contents of those documents beyond the facts personally observed by Plaintiff.

## D. Failure to Conduct a Reasonable Investigation

101. Plaintiff is informed and believes that prior to his arrest Defendants relied almost exclusively upon the accusations of a single reporting witness.

102. Before arresting Plaintiff, Defendants failed to interview neutral witnesses.

103. Before arresting Plaintiff, Defendants failed to evaluate inconsistencies in the reporting witness's account.

104. Before arresting Plaintiff, Defendants failed to obtain corroborating evidence.

105. Before arresting Plaintiff, Defendants failed to conduct a reasonable investigation into the credibility of the accusations.

106. Upon information and belief, other occupants of the residence were interviewed only after Plaintiff had already been arrested and removed from the residence.

107. By that time Plaintiff had already lost his liberty.

108. The subsequent investigation therefore could not have supplied probable cause for the arrest itself.

109. Plaintiff is further informed and believes that the detective later assigned to investigate the matter never interviewed Plaintiff before the prosecution declined to file criminal charges.

109A. Before Plaintiff was transported from his residence, Defendants conducted no meaningful interview of Plaintiff concerning the allegations beyond asking whether he had assaulted or made life-threatening threats against the reporting roommate and receiving Plaintiff's unequivocal denial.

109B. Defendants did not ask Plaintiff to explain the circumstances underlying the accusation, did not request a written statement, and did not seek additional information from Plaintiff before placing him under arrest.

109C. Upon information and belief, neutral witnesses residing at the property were interviewed only after Plaintiff had already been arrested and removed from the residence.

109D. Upon information and belief, the detective assigned to investigate the matter never interviewed Plaintiff before the Los Angeles City Attorney declined to file criminal charges.

109E. These facts demonstrate that significant investigative steps occurred only after Plaintiff had already been deprived of his liberty.

110. A reasonable peace officer would have understood that a custodial arrest is not a substitute for a reasonable criminal investigation.

111. A reasonable peace officer would have understood that probable cause must exist before an arrest is made.

112. A reasonable peace officer would have understood that an arrest may not be justified by evidence discovered only after the arrest.

**E. Lack of Probable Cause**

113. At the time Defendants entered Plaintiff's residence, they possessed no judicial warrant.

114. Plaintiff had committed no crime in Defendants' presence.

115. Defendants observed no criminal conduct.

116. Defendants observed no physical injuries suggesting an assault had recently occurred.

117. Defendants observed no weapon.

8 | P a g e

118. Defendants observed no ongoing disturbance.

119. Plaintiff was asleep when Defendants arrived.

120. Plaintiff immediately denied the allegations.

121. Plaintiff remained cooperative throughout the encounter.

122. Plaintiff posed no immediate danger to Defendants or to any other person.

123. Defendants nevertheless arrested Plaintiff without first obtaining sufficient objective evidence establishing probable cause.

124. Plaintiff is informed and believes that no objectively reasonable officer possessing the information available to Defendants at the time could have concluded that probable cause existed to arrest Plaintiff without conducting further investigation.

125. The subsequent decision of the Los Angeles City Attorney not to file criminal charges further supports Plaintiff's allegation that probable cause was lacking at the time of arrest, although Plaintiff recognizes that the absence of criminal charges is not, by itself, dispositive of the probable-cause issue.

125A. The sequence of events is significant. Defendants came to Plaintiff's residence, entered Plaintiff's private bedroom without a warrant or consent, handcuffed Plaintiff, removed him from his residence, transported him under the representation that he would be questioned, delivered him to jail for booking, and only thereafter conducted significant investigative steps. Plaintiff alleges that this sequence demonstrates that Defendants deprived him of his liberty before conducting the reasonable investigation required to establish probable cause.

## F. Conditions of Detention

126. Plaintiff remained incarcerated for approximately nineteen hours.

127. Plaintiff repeatedly requested permission to contact a family member or attorney.

128. Those requests were not meaningfully accommodated.

129. Plaintiff repeatedly requested access to the telephone numbers stored in his cellular telephone.

130. Defendants and subsequent custodial personnel denied that request.

131. Plaintiff's cellular telephone remained visible inside a transparent evidence bag.

132. Plaintiff explained that he could identify needed telephone numbers merely by viewing the screen through the transparent evidence bag.

133. That request was also denied.

134. Plaintiff was unable to read important written instructions because Defendants had refused to allow him to retrieve his eyeglasses before transporting him from his residence.

135. Plaintiff remained dressed only in minimal summer clothing and sandals for much of his confinement.

136. Plaintiff repeatedly experienced significant cold during his detention.

137. Plaintiff did not receive adequate clothing for many hours.

138. Plaintiff continued suffering emotional distress throughout the confinement.

## VI. CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

### 42 U.S.C. §1983        Fourth Amendment

### Warrantless Entry into Plaintiff's Residence

(Against the Individual USC DPS Defendants and DOES 1–20)

139. Plaintiff realleges and incorporates by reference paragraphs 1 through 138 as though fully set forth herein.

140. The Fourth Amendment affords the highest constitutional protection to an individual's home and private living quarters.

141. Plaintiff possessed a reasonable expectation of privacy in his rented bedroom.

142. Defendants entered Plaintiff's private bedroom without a judicial warrant.

143. Plaintiff did not consent to Defendants entering his private bedroom.

144. No person possessing lawful authority consented to Defendants entering Plaintiff's private living space.

145. No exigent circumstances existed.

146. Plaintiff was asleep when Defendants arrived.

147. Defendants nevertheless entered Plaintiff's bedroom and remained there while exercising governmental authority over Plaintiff.

148. Such warrantless entry violated Plaintiff's rights under the Fourth Amendment.

149. As a direct and proximate result, Plaintiff suffered damages according to proof.

## SECOND CLAIM FOR RELIEF

**42 U.S.C. §1983       Fourth Amendment**

**Unlawful Detention**  (Against the Individual USC DPS Defendants and DOES 1–20)

150. Plaintiff realleges paragraphs 1 through 149.

151. Plaintiff was seized within the meaning of the Fourth Amendment when Defendants restrained his freedom of movement.

152. Plaintiff was detained inside his residence before any lawful arrest occurred.

153. Plaintiff was handcuffed.

154. Plaintiff was prevented from leaving.

155. Plaintiff was transported away from his residence.

156. Plaintiff was continuously restrained thereafter.

157. Defendants lacked reasonable legal justification to detain Plaintiff in the manner alleged.

158. Defendants detained Plaintiff before conducting a constitutionally adequate investigation.

159. The detention was objectively unreasonable under the circumstances.

160. As a direct and proximate result, Plaintiff suffered damages according to proof.

## THIRD CLAIM FOR RELIEF

**42 U.S.C. §1983       Fourth Amendment**

**Unlawful Arrest and Unreasonable Seizure**

(Against the Individual USC DPS Defendants and DOES 1–20)

161. Plaintiff realleges paragraphs 1 through 160.

162. The Fourth Amendment prohibits arrests unsupported by probable cause.

163. Defendants arrested Plaintiff without a warrant.

164. Defendants lacked probable cause to believe Plaintiff had committed any criminal offense, including, without limitation, California Penal Code §422.

165. At the time of arrest, Defendants possessed no objective evidence sufficient to establish probable cause.

166. Defendants relied primarily upon an uncorroborated accusation that had not been reasonably investigated.

167. A reasonable peace officer would have understood that probable cause must exist before a custodial arrest is made and cannot be established by investigative steps undertaken only after the arrest has already occurred.

168. Defendants nevertheless arrested Plaintiff.

169. Their conduct violated clearly established Fourth Amendment rights.

170. Plaintiff suffered damages according to proof.

## FOURTH CLAIM FOR RELIEF

### 42 U.S.C. §1983        Failure to Intervene

(Against Individual Officers and Supervisors)

171. Plaintiff realleges paragraphs 1 through 170.

172. One or more Defendants observed the unconstitutional conduct described herein.

173. Those Defendants possessed a realistic opportunity to prevent or stop the constitutional violations.

174. Those Defendants failed to intervene.

175. Their failure substantially contributed to Plaintiff's injuries.

176. Each Defendant is liable for his or her own failure to prevent constitutional violations that reasonably could have been prevented.

## FIFTH CLAIM FOR RELIEF

### Liability of Private Entity Acting Under Color of State Law

### 42 U.S.C. §1983

(Against USC)

177. Plaintiff realleges paragraphs 1 through 176.

178. USC operated USC DPS as an entity exercising delegated governmental arrest authority.

179. USC authorized its officers to perform governmental law-enforcement functions including criminal investigation, detention, arrest, transportation of suspects, and initiation of criminal booking.

180. At all relevant times USC acted under color of state law.

181. Plaintiff's injuries were caused, at least in part, by USC's own policies, customs, practices, deliberate indifference, failures to supervise, failures to train, failures to discipline, failures to preserve evidence, and ratification of unconstitutional conduct.

182. Upon information and belief, those policies and customs included, among others:

a. inadequate training regarding probable cause;

b. inadequate training regarding warrantless residential entry;

c. inadequate supervision of officers exercising delegated governmental authority;

d. permitting custodial arrests before adequate factual investigation;

e. inadequate policies concerning preservation of body-camera recordings and electronic evidence;

f. failure to discipline officers engaging in unconstitutional conduct;

g. ratification of the conduct described herein after Plaintiff's arrest.

183. USC knew or reasonably should have known that such policies created a substantial risk of constitutional violations.

184. USC nevertheless maintained or tolerated those policies with deliberate indifference to constitutional rights.

185. Those policies, customs, failures, or ratification were moving forces behind Plaintiff's injuries.

**SIXTH CLAIM FOR RELIEF**

**California False Arrest and False Imprisonment**

(Against All Participating Defendants)

186. Plaintiff realleges paragraphs 1 through 185.

187. Defendants intentionally restrained Plaintiff.

188. Defendants intentionally deprived Plaintiff of his liberty.

189. Plaintiff did not consent.

190. Defendants lacked lawful authority or probable cause.

191. Plaintiff suffered damages according to proof.

192. To the extent applicable, Plaintiff will establish compliance with, excuse from, or inapplicability of any California claims-presentation requirements following discovery regarding Defendants' legal status.

## SEVENTH CLAIM FOR RELIEF

### California Civil Code §52.1 (Bane Act)

(Against All Defendants)

193. Plaintiff realleges paragraphs 1 through 192.

194. Defendants intentionally interfered with Plaintiff's constitutional rights.

195. Such interference occurred through threats, intimidation, coercion, physical restraint, handcuffing, transportation, imprisonment, and other coercive conduct.

196. Defendants acted intentionally or with reckless disregard of Plaintiff's constitutional rights.

197. Plaintiff suffered damages according to proof.

## EIGHTH CLAIM FOR RELIEF

### Negligence

(Against USC and Responsible Defendants)

198. Plaintiff realleges paragraphs 1 through 197.

199. Defendants owed Plaintiff duties of reasonable care in conducting investigations, entering residences, exercising delegated peace-officer authority, making arrests, preserving evidence, supervising officers, and respecting constitutional rights.

200. Defendants breached those duties.

201. Those breaches were substantial factors in causing Plaintiff's injuries.

202. Plaintiff suffered damages according to proof.

## NINTH CLAIM FOR RELIEF

**Negligent Infliction of Emotional Distress**

(Against USC and Responsible Defendants)

203. Plaintiff realleges paragraphs 1 through 202.

204. Defendants' negligence foreseeably caused Plaintiff severe emotional distress.

205. Plaintiff experienced profound psychological trauma resulting from being awakened, restrained, handcuffed, arrested, jailed, and deprived of his liberty despite never before having been arrested or incarcerated.

206. Plaintiff has experienced continuing anxiety, humiliation, sleep disturbance, fear, and symptoms consistent with post-traumatic stress.

207. Defendants knew or reasonably should have known that their conduct created an unreasonable risk of causing severe emotional distress.

208. Plaintiff suffered damages according to proof.

## TENTH CLAIM FOR RELIEF

**Trespass**

(Against Participating Defendants)

209. Plaintiff realleges paragraphs 1 through 208.

210. Plaintiff possessed lawful and exclusive rights of possession and privacy in his rented bedroom.

211. Defendants intentionally entered that space without lawful authority.

212. Plaintiff did not consent.

213. Plaintiff suffered damages according to proof.

## ELEVENTH CLAIM FOR RELIEF

**Battery**

(Against Individual Defendants)

214. Plaintiff realleges paragraphs 1 through 213.

215. Defendants intentionally handcuffed, restrained, and physically touched Plaintiff.

216. Because the detention and arrest were unlawful, the physical contact was unauthorized.

217. Plaintiff suffered physical pain, including continuing pain in his wrist, emotional distress, humiliation, and other damages according to proof.

## VII. EVIDENCE PRESERVATION

218. Plaintiff is informed and believes that evidence relevant to the claims asserted herein exists and remains within the possession, custody, or control of Defendants.

219. Such evidence may include, without limitation:

    a. body-worn camera recordings;

    b. in-car video recordings;

    c. dispatch audio recordings;

    d. CAD logs;

    e. radio communications;

    f. incident reports;

    g. arrest reports;

    h. investigative reports;

    i. witness statements;

    j. officer notes;

    k. booking records;

    l. photographs;

    m. surveillance recordings;

    n. electronic communications;

    o. text messages;

    p. emails;

    q. GPS records;

    r. policies;

    s. training materials;

    t. disciplinary records;

    u. internal investigations;

    v. electronically stored information relating to Plaintiff's arrest.

220. Plaintiff has repeatedly attempted to obtain records concerning his own arrest from USC DPS, LAPD, and related agencies.

221. Those requests were denied, redirected, or otherwise refused.

222. Defendants knew or reasonably should have known shortly after Plaintiff's arrest that litigation concerning these events was reasonably foreseeable.

223. Defendants therefore had, and continue to have, a duty to preserve all evidence relating to the events alleged herein.

224. Plaintiff requests that all such evidence be preserved throughout the pendency of this litigation.


## VIII. DAMAGES

225. As a direct and proximate result of Defendants' conduct, Plaintiff suffered substantial damages including, but not limited to:

    a. loss of liberty;

    b. unlawful seizure;

    c. unlawful detention;

    d. unlawful arrest;

    e. invasion of the privacy and sanctity of Plaintiff's home;

    f. emotional distress;

    g. humiliation;

    h. embarrassment;

    i. anxiety;

    j. fear;

    k. psychological trauma;

    l. continuing symptoms consistent with post-traumatic stress;

    m. continuing physical pain in Plaintiff's wrist resulting from the handcuffing;

n. loss of sleep;

o. interruption of Plaintiff's education;

p. missed examinations;

q. diminished academic performance;

r. interruption of Plaintiff's aviation training;

s. repayment of scholarship funds;

t. loss of prepaid educational expenses;

u. delay in obtaining FAA certifications;

v. delay in entering Plaintiff's intended aviation career;

w. housing displacement;

x. moving expenses;

y. increased housing costs;

z. transportation expenses;

aa. bail bond expenses;

bb. attorney consultation expenses;

cc. court-related expenses;

dd. reputational injury;

ee. diminished future earning capacity;

ff. other economic and non-economic damages according to proof.

## IX. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment against Defendants, jointly and severally where permitted by law, and requests that the Court award:

A. General damages according to proof;

B. Special damages according to proof;

C. Compensatory damages;

D. Nominal damages for violations of Plaintiff's constitutional rights;

E. Damages for unlawful search, seizure, detention, arrest, and imprisonment;

F. Damages for invasion of privacy and unlawful entry into Plaintiff's residence;

G. Damages for emotional distress, humiliation, embarrassment, anxiety, mental anguish, and psychological injury;

H. Damages for continuing physical injury, including wrist pain resulting from Defendants' use of restraints;

I. Educational damages, including interruption of Plaintiff's academic studies, delayed completion of educational programs, delayed FAA certifications, scholarship repayment obligations, lost educational opportunities, and related losses;

J. Economic damages, including but not limited to approximately $5,000 in non-refundable bail bond expenses, relocation expenses, increased housing costs, transportation expenses, educational losses, attorney consultation expenses, court costs, and all other out-of-pocket losses according to proof;

K. Damages for reputational injury affecting employment opportunities, aviation licensing, professional advancement, security clearances, and background investigations;

L. Damages for diminished earning capacity;

M. Punitive damages against the individual Defendants to the fullest extent permitted by law;

N. A declaration that Defendants violated Plaintiff's rights under the Fourth Amendment to the United States Constitution;

O. Appropriate injunctive and equitable relief requiring preservation and production through discovery of all body-worn camera recordings, dispatch recordings, CAD logs, investigative reports, arrest reports, booking records, surveillance recordings, witness statements, electronic communications, electronically stored information, and all other evidence relating to Plaintiff's arrest;

P. Such additional equitable relief as may be appropriate regarding correction, sealing, expungement, or other lawful relief concerning Plaintiff's arrest records to the extent authorized by law;

Q. Costs of suit;

R. Attorney's fees pursuant to 42 U.S.C. §1988 should Plaintiff later retain counsel or otherwise become entitled to recover such fees;

S. Prejudgment and post-judgment interest as permitted by law;

T. Such other and further relief as the Court deems just and proper.

## X. JURY DEMAND

**226.** Plaintiff demands trial by jury on all issues so triable.


Dated: June 27. 2026

Respectfully submitted,

**JOZSEF CSIZMADIA**

Plaintiff, Pro Se